UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

CIVIL ACTION NO.  05-02

ERIC L. THOMPSON,                                                                     PLAINTIFF,

v.                                              **OPINION AND ORDER**

NORTH AMERICAN STAINLESS, LP,                                          DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment (Rec. No. 12) of the Defendant

North American Stainless, FLP ("North American").

## I.        FACTS.

In his Complaint, the Plaintiff, Eric L. Thompson, alleges that he was employed by North American

from February, 1997 to March, 2003.  (Rec. No. 1, Complaint ¶ 6). He further asserts that, in September,

2002, his then-fiancé and current wife, who was also employed by North American,  filed a charge with the

EEOC alleging that the company discriminated against her because of her gender. (Rec. No. 1, Complaint

¶ 8).  The EEOC notified North American of the charge in February, 2003. (Rec. No. 1, Complaint ¶ 8).

Thompson alleges that, after receiving notice of his wife's EEOC complaint, North American retaliated

against him by terminating him.  (Rec. No. 1, Complaint ¶ 9).

## II.       STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**III.    ANALYSIS.**

**A.    Discriminatory Termination under § 2000e-2(a).**

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must demonstrate that : 1) he was a member of a protected class; 2) he was subject to an adverse employment action; 3) he was qualified for the job; and 4) for the same or similar conduct, he was treated differently from similarly situated non-minority employees. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

In *Bell v. Safety Grooving & Grinding, L.P.*, 107 Fed. Appx. 607 (6th Cir. 2004), the Plaintiff, Bell, charged that his former employer declined to rehire him after a seasonal layoff because his girlfriend filed a gender discrimination charge against the employer with the EEOC. *Id.* at 609. Bell asserted both a retaliation claim and a discrimination claim under Title VII against the employer, arguing that the employer discriminated against him because of his association with his girlfriend – a member of a protected class. *Id.* With regard to the plaintiff's discrimination claim under § 2000e-2(a), the Sixth Circuit stated the following:

> This court has found association with a protected party to be relevant under § 2000e-2(a) in just two situations; neither avails Bell's Title VII claim. In *Tetro v. Elliott Popham Pontiac, Olsmobile, Buick, & GMC Trucks, Inc.,* the court reasoned that "a white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child." 173 F.3d 988, 994 (6th Cir.1999). The white employee was protected under Title VII

2

not simply because of his relationship to his biracial child but because this relationship made the employee's own race the basis of his employer's discrimination, violating Title VII's prohibition against discrimination on the basis of race. *Id.* at 994-95. Bell, meanwhile, is claiming discrimination based solely on his relationship with his girlfriend, an association that-unlike the plaintiff's relationship with his child in *Tetro*-does not affect Bell's own Title VII status. And in *Johnson v. University of Cincinnati,* the court held that the plaintiff, a university administrator, stated a claim of Title VII discrimination not because of his status as an African-American but because of his advocacy on behalf of minorities and women. 215 F.3d 561, 575 (6th Cir.2000). We do not view Bell's actions on behalf of Fetty as analogous to the significant advocacy engaged in by the plaintiff in *Johnson.* Bell discussed neither Fetty's specific discrimination charge nor the general subject of sexual discrimination with Safety management. Moreover, Bell testified that he "didn't think [Fetty's treatment] was fair" but that he "didn't make a big issue out of it, not with anybody [at Safety]." At most, Bell complained to people at Safety about the company's business decision to have its full-time, male employees move traffic barrels instead of having Fetty move them. As he himself put it, "It was a labor issue with us men. It was not a discriminatory [sic] with us men."
Accordingly, Bell has not demonstrated that he is entitled to protection under
§ 2000e-2(a), and we affirm the district court's grant of summary judgment on this claim.

*Id.*

   In *Johnson*, the plaintiff was an African American who was employed by the University of Cincinnati as its Vice President of Human Resources and Human Relations and managed its affirmative action program.  215 F.3d at 566.  He claimed that the University discharged him because of his efforts to insure that the University complied with its affirmative action policies and because of his advocacy on behalf of women and minorities. *Id.* at 572.

   As to the plaintiff's discrimination claim under 42 U.S.C. § 2000e-2, the district court held that the claim failed because he "postur[ed] his protected status, not as a member of a racial minority, but rather as a person who advocates on behalf of women and minorities." *Id*. at 573.  The Sixth Circuit reversed, stating that "the fact that Plaintiff has not alleged discrimination because of *his* race is of no moment inasmuch as it was a racial situation in which Plaintiff became involved – Plaintiff's advocacy on behalf of women and minorities in relation to Defendant's alleged discriminatory hiring practices – that resulted in Plaintiff's discharge from employment."  215 F.3d at 575.

   Though the plaintiff was an African American, the Court further stated that, "[i]t is clear that a

Caucasian high-level affirmative action official could bring a claim under § 1981 and § 2000e-2(a) for discrimination based upon his advocacy on behalf of minorities because the discrimination would be 'because of such individual's race,' where the race of the minorities for which he was advocating would be 'imputed' if you will to the Caucasian high-level affirmative action official." *Id.*

Thompson has not alleged that he engaged in any significant advocacy on behalf of women or minorities. Thus, this is not a case like *Johnson* where the Court can impute a protected race or gender to Thompson. Further, unlike the plaintiff in *Tetro*, Thompson is not claiming that his relationship with his wife made Thompson's own race or gender the basis of his employer's discrimination. Accordingly, Thompson is not a member of a protected class for purposes of a discrimination claim under 42 U.S.C. § 2000e-2 and this claim fails as a matter of law.

**B.      Retaliation under 42 U.S.C. § 2000e-3.**

Title VII's antiretaliation provisions are found at 42 U.S.C. § 2000e-3 which makes it unlawful for an "employer to discriminate against any of his employees. . . .because he has opposed any practice made an unlawful employment practice" by Title VII "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under" Title VII. 42 U.S.C. § 2000e-3(a).

In order to succeed on a Title VII retaliation claim, the plaintiff must show: 1) that he engaged in activity protected by Title VII; 2) that he was the subject of an adverse employment action; and 3) that there exists a causal link between his protected activity and the adverse action of his employer. *Equal Employment Opportunity Commission v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993).

To the extent that Thompson claims that he was retaliated against due to his own activities in opposition to his employer's treatment of his fiancé, he has not presented any evidence that he sufficiently opposed any act made unlawful under Title VII to warrant § 2000e-3(a) protection against retaliation. Likewise, Thompson has not presented any evidence that North American was aware of any assistance he

4

may have provided his fiancé in filing her EEOC complaint.

Thompson's complaint, however, is not that he was retaliated against because of his own protected activity, but that he was retaliated against because his fiancé filed an EEOC complaint against North American. Again, Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Guided by this language, several circuits have held that retaliation against a person who has not himself engaged in protected conduct is not actionable under Title VII. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir. 1998)("[T]he rule. . . that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer has done so[,] is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation."); *Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 570 (3d Cir. 2002)(interpreting similar language in the ADA and ADEA); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1227(5th Cir. 1996)(ADEA); *see also Higgins v. TJX Companies, Inc.*, 328 F.Supp.2d 122 (D.Me. 2004).

Nevertheless, recognizing that retaliating against the friends and relatives of employees who oppose unlawful employment practices will deter employees from exercising their protected rights just as much as retaliating against the employees themselves, other courts and the EEOC have interpreted Title VII to prohibit retaliation against a third-party. *See, e.g., DeMedina v. Reinhardt*, 444 F.Supp. 573, 580 (D.D.C. 1978)("Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. . .[and] tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII."), *aff'd in relevant part*, 686 F.2d 997 (D.C.Cir. 1982); *Gonzalez v. New York State Dep't of*

5

*Correctional Servs.,* 122 F.Supp.2d 335, 346-47 (N.D.N.Y. 2000)("[B]ecause plaintiff alleges to have suffered adverse employment action by Defendants because of her husband's complaints of discrimination, she has standing to assert a Title VII claim."); *EEOC v. Nalbandian Sales, Inc.*, 36 F.Supp.2d 1206, 1211-12 (E.D. Cal. 1998)(recognizing third party retaliation claims asserted under Title VII partly in deference to the EEOC's "long-standing policy" of recognizing and enforcing such claims);  E.E.O.C. Compliance Manual § 8-II(B)(3)(c)("Title VII. . .prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.")

Looking just to the language of the statute, this Court agrees with those Courts which have determined that, under its plain language, the statute does not permit a retaliation claim by a plaintiff who did not himself engage in protected activity. The statute prohibits an employer from discriminating against any employee because "*he* has opposed any practice made an unlawful employment practice" by Title VII "or because *he* has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under" Title VII.  42 U.S.C. § 2000e-3(a)(emphasis added). It is clear that *he* refers to the employee who has suffered discrimination, thus requiring that the person retaliated against be the person who engaged in protected conduct. The statute is not ambiguous in this regard.

Nevertheless, in *Ohio Edison*, the Sixth Circuit quoted approvingly from the D.C. district court's opinion in *De Medina* approving of third party retaliation claims. 7 F.3d at 543-44. Accordingly, some courts have interpreted *Ohio Edison* to indicate the Sixth Circuit's approval of such claims. *See, e.g., McKenzie v. Comcast Cable Communications, Inc.*, 393 F.Supp.2d 362, 380 (D. Md. 2005); *But see Gonzalez*, 122 F.Supp.2d at 347 (stating that "arguably," *Ohio Edison* stands for the proposition that one employee may bring a Title VII claim when he is retaliated against for the actions of another employee but that the decision's holding is limited to situations where "an employee, or his representative, has opposed any practice made an unlawful employment practice."); *Higgins*, 328 F.Supp.2d at 124 n.2 (*Ohio Edison* is limited to situations

6

where one employee engaged in protected conduct on behalf of another employee).

In *Ohio Edison*, the EEOC filed a complaint under Title VII, alleging that an employer withdrew an offer to reinstate a minority employee ("Whitfield") in retaliation for a co-employee's complaints regarding discriminatory treatment of Whitfield. 7 F.3d at 542. The complaining co-employee was also a minority. *Id*.

The district court dismissed the complaint because Title VII does not specifically cover discrimination against one employee for the acts of another. *Id*. at 543. The Sixth Circuit reversed, recognizing that, while Title VII "makes it unlawful for an employer to discriminate against an employee because the employee opposed an unlawful employment practice, or made a charge, or participated in an investigation, proceeding, or hearing related to Title VII," the statute "does not specifically cover the situation in the present case in which the employee's (or former employee's) representative engages in protected activity on his behalf and the employee, who had his representative act for him, is then retaliated against." *Id*. at 543.

The Court held that the language – "because he has opposed any practice made an unlawful employment practice under this subchapter,"– in Title VII should be construed to include a claim "in which an employee, *or his representative*, has opposed any practice made an unlawful employment practice." *Id*. at 545-46.

Thus, the precise issue before the Court in *Ohio Edison* was whether a plaintiff employee who was retaliated against could assert a retaliation claim where a co-employee, *acting as the plaintiff employee's representative and at the plaintiff employee's behest*, opposed an unlawful employment practice of which the plaintiff employee was the victim. The case appears to hold that, in such cases, the protected activity of the plaintiff employee's agent is imputed to the plaintiff employee. Here, Thompson is not claiming that he was retaliated against because another employee engaged in protected activity on Thompson's behalf to protest an unlawful employment action of which Thompson was the victim. Instead, Thompson is claiming that he was retaliated against because his fiancé engaged in protected activity on her own behalf to protest an unlawful employment action of which she was the victim.

After *Ohio Edison*, in *Johnson*, the Sixth Circuit, quoted approvingly from the EEOC Compliance Manual stating that the "person claiming retaliation need not be the person who engaged in the opposition, such that 'Title VII. . . prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights." *Johnson*, 215 F.3d at 580 (quoting from the EEOC Compliance Manual ¶ 8006).

Nevertheless, *Johnson* did not involve a third party retaliation claim. Again, in *Johnson*, the plaintiff was a minority employee who administered the University's affirmative action program. For his retaliation claim under § 2000e-3(a), he claimed he was retaliated against because he himself opposed the University's allegedly illegal hiring practices and because he himself participated in filing an EEOC claim. 215 F.3d at 578. The Court ultimately determined that the plaintiff had established that he had opposed conduct which he reasonably believed to be unlawful. *Id.* at 581. Thus, any statements the Sixth Circuit made in that case regarding third party retaliation claims, while instructive, were dicta and not determinative of any issue before that Court or currently before this Court.

In contrast, in *Bell*, a more recent, albeit unpublished, decision, the Sixth Circuit was faced with the issue that is now before this Court. Again, in *Bell*, the plaintiff charged that his employer failed to rehire him in retaliation for his girlfriend's EEOC charge. 107 Fed. Appx. at 609. In analyzing Bell's retaliation claim under § 2000e-3, the Sixth Circuit considered only the plaintiff's own opposition to his employer's treatment of the plaintiff's girlfriend and determined that the plaintiff had not showed active and consistent opposition. *Id*. at 610. In determining whether the plaintiff had engaged in protected activity, the Sixth Circuit did not consider the plaintiff's girlfriend's protected activity of filing an EEOC complaint. *Id*.

Accordingly, the Court is faced with a statute which, by its plain language does not permit third party retaliation claims; the EEOC's practice of permitting such claims; Sixth Circuit cases which, in dicta, indicate that such claims are permissible; and a more recent, unpublished Sixth Circuit case which does not permit such a claim. The Court recognizes that retaliating against a spouse or close associate of an employee will

deter the employee from engaging in protected activity just as much as if the employee were himself retaliated against. But, the Court also finds persuasive the reasoning that Title VII already offers broad protection in such situations by prohibiting employers from retaliating against employees who oppose unlawful employment actions or who participate in any manner in a proceeding under Title VII. *See, e.g., Riceland Foods*, 151 F.3d at 819.

Given all of these considerations, the Court will dismiss Thompson's retaliation claim. In doing so, however, the Court recognizes the lack of controlling Sixth Circuit law on this issue and is therefore guided most significantly by the unambiguous language of the statute.

**IV.   CONCLUSION.**

For the above reasons, the Court hereby ORDERS that the Defendant's Motion for Summary Judgment is GRANTED (Rec. No. 12) and this action is STRICKEN from the active docket of this Court.

Dated this 20th day of June, 2006.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

9